IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRY POLLINGER | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | C.A. NO. _____ |
| | § | |
| TRIUMPH GROUP, INC. | § | |
| DBA TRIUMPH AEROSTRUCTURES | § | |
| -VOUGHT AIRCRAFT DIVISION | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

Plaintiff Jerry Pollinger, complaining of Defendant Triumph Group, Inc. *dba* Triumph Aerostructures-Vought Aircraft Division, would show as follows:

1. Plaintiff is an individual.

2. Defendant is a corporation, with its principal place of business in Grand Prairie, Texas, and may be served with summons through any officer or managing agent at 1038 Santerre Drive, Grand Prairie, Texas 75050. Defendant may also be served through it registered agent, Corporation Service Company d/b/a CSC- Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

### Jurisdiction

3. This Court has jurisdiction over this suit under 28 U.S.C. §1331, as it asserts a claim under 31 U.S.C. §3730(h). This Court also has supplemental jurisdiction under 28 U.S. §1367 over Plaintiff's claim of wrongful termination under Texas law.

4. Venue is proper under 28 U.S.C. §1391(b) and 31 U.S.C. §3732(a) because Defendant transacts business in this District and Division and the acts and omissions on which this action is based occurred in this District and Division.

Facts

5. Between 1986 and 2012, Defendant and its predecessors-in-interest have been engaged, among other things, in the business of manufacturing significant portions of aircraft, referred to as "assemblies," as subcontractor to a prime contractor, primarily The Boeing Company ("Boeing"). Boeing retained Defendant to perform work in conjunction with contracts between Boeing and the Government, through its Department of Defense, for the benefit of the United States Air Force and United States Army. Strict compliance with the terms of the subcontract and prime contract were required as a condition of payment.

6. Plaintiff first became employed by a predecessor-in-interest of Defendant, LTV Corporation, in April 1986, as an inspector. As an inspector, Plaintiff was responsible for assuring that the assemblies were manufactured in compliance with specifications of the governing contracts, federal regulations governing the performance of such contracts, and industry standards (hereinafter referred to as the "Requirements").

7. Between 1986 and 1996, Vought Aircraft Corporation became the successor in interest to LTV Corporation for purposes of the contracts referred to in Paragraph 5.

8. Since 1986, the inspection process at Defendant and its predecessors-in-interest to assure compliance with the Requirements has included verification of the compliance of the assembly at each stage of manufacture. Documentation of any non-conformance with the Requirements must be entered into a computer engineering system and a "withholding tag" is then affixed to any non-conforming part of an assembly. An engineer must then physically

review the non- conforming part or assembly to determine the cause and further determine whether the non-conformance can be corrected so as to put the assembly in compliance. The physical review and determination must also be documented.

9. If the non-conforming part or assembly is correctable, an engineer must then document the method of correction, ensure that the correction is promptly executed and further document the same. If the non-conformance is not correctable, the nonconforming part or assembly must be scrapped and this event also has to be fully documented.

10. In addition to inspecting for defects and determining whether they are correctable, the inspection process also covers the materials used in parts to ensure they are in compliance and fit tooling mechanisms before they can be used. The inspection must also verify the correct location within parts or assemblies where holes must be drilled and fasteners applied. This part of the inspection must also be documented before any assembly takes place in order to satisfy the Requirements.

11. Until in or about 1996, Plaintiff worked as an inspector at LTV Corporation or Vought Aircraft Corporation and was responsible for inspecting various stages of assembly of the B-1, B-2 and C-17 aircrafts operated by the United States Air Force. In or about 1998, Plaintiff resumed employment with Vought Aircraft Corporation as a mechanic-assembler, but continued to perform inspection duties for Defendant or one of its predecessors-in-interest from time to time through 2012.

12. These inspections performed by Plaintiff also included the C-17 and C-30 airplanes operated by the United States Air Force and the Blackhawk helicopter operated by the United States Army.

13. Between 1998 and 2010, Northrop Grumman Corporation became the successor to Vought Aircraft Corporation and then Vought Aircraft Industries, Inc. became the successor to Northrop Grumman Corporation. In 2010, Defendant became the successor in interest to Vought Aircraft Industries, Inc. and thereby became Plaintiff's employer.

14. Before and after 2007, Plaintiff observed that Defendant or one of its predecessors-in-interest had made, and was continuing to make, through Boeing, false claims against the Government constituting a violation by Defendant or one of its predecessors-of-interest of 31 U.S.C. §3729, in substantial amounts. The false claims after October 2007 were in the form of false or otherwise fraudulent certifications that the parts being made or assembled pursuant to the governing contracts and federal regulations, specifically the assemblies for Blackhawk and C-17 aircraft, fully complied with the Requirements. In fact, Defendant had not complied with the Requirements, but knowingly certified to the contrary to Boeing.

15. Specifically, in the case of the Blackhawk helicopter, Defendant or one of its predecessors-in-interest, between 2007 and 2010, engaged in the following conduct:

    a. Defendant installed parts on assembly of the helicopters without verification and documentation of proper placement within the assemblies in accordance with the Requirements;

    b. Defendant installed parts within assemblies intended to be used in one model of the helicopter in the assemblies for another model for which the parts were not so intended;

    c. Defendant did not properly inspect all or part of each assembly it manufactured to ensure compliance with the Requirements;

    d. Defendant installed in or on one or more assemblies parts that were not fit for use on any of the helicopters;

    e. Defendant retained, or scrapped, parts not incorporated in any assemblies, but still charged the prime contractor and therefore the Government for the same parts;

    f. Defendant purchased unnecessary parts for assemblies;

g. Defendant installed beams in assemblies that were not properly treated prior to installation;

h. Defendant prepared false inspection reports to represent conformance with the Requirements;

i. Defendant failed to drill certain holes in their proper location on certain assemblies as dictated by the Requirements;

j. Defendant drilled such holes improperly, in non-conformance with the Requirements and failed to install the fasteners in locations as dictated by the Requirements;

k. Defendant failed to install shims between bulkheads within assemblies or installed them in a manner that was inconsistent with the Requirements;

l. Defendant approved work performed by its employees on assemblies without proper supervision and overview of the work;

m. Defendant encouraged its employees not to raise issues of compliance with the Requirements;

n. Defendant failed to repair dents to an assembly caused by horseplay by employees on the assembly line;

o. Defendant performed repair operations on assemblies that were not in accordance with the Requirements, including failing to issue proper documentation of repairs;

p. Defendant failed to document manufacturing defects in parts or assemblies in accordance with the Requirements;

16. In the case of the C-17 airplane, Defendant, between 2010 and 2012, engaged in the following conduct:

a. Defendant failed to properly inspect, in accordance with the Requirements, substantial portions of the assemblies to be incorporated within the airplanes;

b. Defendant failed to perform manufacturing operations on assemblies in accordance with the Requirements;

c. Defendant failed to properly perform certain electrical tests on assemblies, or parts of assemblies, in accordance with the Requirements;

    d.      Defendant failed to remove certain finish on a bracket incorporated within assemblies in accordance with the Requirements;

    e.      Defendant used improper tooling in the manufacturing of assemblies in violation of the Requirements;

    f.      Defendant removed parts from some assemblies and reused them without proper documentation in accordance with the Requirements;

    g.      Defendant bent parts not suitable for installation in assemblies in order to make them fit, contrary to the Requirements;

    h.      Defendant falsified documents relating which parts had been scrapped;

    i.      Defendant failed to remove and scrap parts as ordered by a third party inspector:

    j.      Defendant made false reports of inspection;

    k.      Defendant misrepresented the qualifications of employees assigned to manufacturing of assemblies;

    l.      Defendant used defective parts in the manufacturing of assemblies;

    m.      Defendant placed parts within assemblies at locations other than as dictated by the Requirements;

    n.      Defendant improperly disposed of parts of assemblies required to be scrapped in accordance with the Requirements;

    o.      Defendant used parts in assemblies which should have been scrapped without proper documentation of fitness for use;

    17.      Defendant had actual knowledge of the false or otherwise fraudulent certifications and other false or otherwise fraudulent representations as to the matters described in Paragraphs 15 and 16. Defendant actually knew that its manufacture of the aircraft parts were not in compliance with the Requirements, or otherwise acted in deliberate ignorance or reckless disregard of the truth, in making the false or otherwise fraudulent certifications and other representations.

18. In violation of 31 U.S.C. §3729, Defendant attempted to defraud the Government, through Boeing, by knowingly presenting one or more false or otherwise fraudulent claims for payment or approval. Defendant also knowingly made, or caused to be made or used, a false record or statement material to a false or otherwise fraudulent claim. Defendant did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the Government responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and has not otherwise furnished information to the Government regarding the false claims at issue or has not done so under the circumstances described in 31 U.S.C. §3729(a)(2)(C). In connection some or all of such conduct referred to in paragraphs 15 and 16, Defendant, upon discovery of the fact of false or otherwise fraudulent claims, created false documentation to hide the fact of the false claims.

19. After Plaintiff's discovery of the conduct giving rise to false claims by Defendant or one or more predecessors-in-interest of Defendant in violation of 31 U.S.C. §3729, Plaintiff took a number of actions to avoid further violation of 31 U.S.C. §3729. Plaintiff complained to supervisors, senior management and human resources representatives of numerous instances in which the Blackhawk helicopter and C-17 airplane were not manufactured or inspected in accordance with the Requirements, including but not limited to complaining of the conduct referred to in the Paragraphs 15 and 16.

20. Plaintiff further specifically complained to supervisors at Defendant that disclosure needed to be made to the Government of some of all of the conduct referred to in Paragraphs 15 and 16.

21. After Defendant complained or otherwise reported to the events referred to in Paragraph 15 and 16, Defendant subjected Plaintiff to adverse actions, including but not limited to:

   a. Falsely criticizing Plaintiff's understanding of the circumstances of the conduct referred to in Paragraphs 15 and 16;

   b. Falsely criticizing various aspects of Plaintiff's performance;

   c. Transferring Plaintiff from one responsibility to another without notice;

   d. Unfairly disciplining Plaintiff;

   e. Isolating Plaintiff;

   f. Threatening Plaintiff with discipline;

   g. Expressing resentment against Plaintiff for raising issues of compliance;

   h. Imposing unreasonable new and additional responsibilities upon Plaintiff;

   i. Imposing procedures that were not imposed upon any peer of Plaintiff who had not similarly complained; and

   j. Refusing to take the advice of Plaintiff that Defendant self-disclose to the Government the false claims it had made in form of incomplete inspections and shoddy work performance.

22. Defendant also made numerous false accusations against Plaintiff to other employees related to Plaintiff's complaints and advice.

23. On April 5, 2012, Plaintiff properly refused to confirm compliance with the Requirements of certain portions of various C-17 assemblies because he had not personally inspected them and therefore could not verify compliance.

24. In retaliation, Defendant suspended Plaintiff without pay.

25. Defendant's demand that Plaintiff to confirm compliance with the Requirement of certain portions of various assemblies which he had not personally inspected was a demand that

Plaintiff violate one or more of the provisions of Title 18 of the United States Code, including 18 U.S.C. §1001.

26.     On April 9, 2012, Plaintiff called Defendant's ethics hotline to report Defendant's failure to comply with the Requirements and his suspension without pay.  Defendant never responded to Plaintiff's call to Defendant's ethics hotline.

27.     On April 11, 2012, Defendant terminated Plaintiff's employment for "insubordinate behavior." This stated reason was pretext, since the suspension and termination were inextricably tied to Plaintiff's refusal to confirm compliance with the Requirements of certain portions of the manufacture of C-17 assemblies which he had not personally inspected and his such lawful acts in furtherance of efforts to stop violations of 31 U.S.C. §3729.

28.     Plaintiff has suffered and is still suffering a loss of income and benefits, loss of reputation, severe emotional distress and related physical manifestations. Furthermore, Plaintiff has been required to incur attorney's fees and costs to pursue this action.

## Claims

29.     For his first cause of action, Plaintiff would show that Defendant has violated 31 U.S.C. §3730(h), in that he was threatened, harassed, discharged and otherwise discriminated against in the terms and conditions of employment because of lawful acts of Plaintiff in furtherance of efforts to stop violations of 31 U.S.C. §3729.  Plaintiff is accordingly entitled to be reinstated to his employment with Defendant and to recover from Defendant two times the amount of his back pay, interest on the back pay, front pay, compensation for any special damages, attorney's fees, prejudgment interest, and costs of court.

30.     For his second cause of action, in the alternative to his first cause of action, Plaintiff would show that Defendant terminated him for the sole reason that he refused to engage

in conduct prosecutable as a crime. Plaintiff is accordingly entitled to recover from Defendant his actual damages, punitive damages, prejudgment interest and costs of court.

31. Plaintiff requests a jury.

WHEREFORE, Plaintiff prays that this Court grant him all relief to which he is entitled.

*Respectfully submitted,*

 /s/  *Robert E. Goodman, Jr.*
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Nicholas A. O'Kelly
State Bar No. 15241235
nao@kilgorelaw.com

KILGORE & KILGORE PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099 Telephone
(214) 953-0133 Facsimile

Attorneys for Plaintiff